DISTRICT JUDGE SWANDAL,
dissenting.
¶180 I concur with Justice Nelson’s dissent. Because of the majority’s circuitous reasoning, its disdain for private property rights, its endorsement of unprincipled and unfettered government action, which will result in the total loss of value, without compensation, of some of the property at issue, and its disavowal of the plain language of the Montana Constitution, I offer additional comments. Justice Nelson exhaustively discussed the applicable law, and I will not repeat that here. I would find that a taking occurred under both the Fifth Amendment to the United States Constitution and Article II, Section 29 of the Montana Constitution in this case and in Kafka v. Montana Dept. of Fish, Wildlife and Parks, 2008 MT 460, 348 Mont. 80, 201 P.3d 8.
¶181 In 1972, the distinction between real property and personal property was well known to the constitutional conventioneers. Article II, Section 29 says, “Private property shall not be taken or damaged for *271 public use without just compensation ....” It does not say “real property” or “land.” It does not exclude businesses and all their accoutrements. It does not say that a physical invasion has to occur for damage or a taking to occur. The 1972 Constitutional Convention left the language from the 1889 Constitution intact, foreclosing the possibility of a lockstep march with the federal government. The majority can offer no textual basis in the Montana Constitution for providing less protection to personal, business, and intangible property than for real property. Private property is private property.
¶182 The majority does claim that it is just too hard to determine damages in certain types of property. Apparently, trial judges will no longer be burdened with giving the instruction that simply because damages are hard to determine does not mean that none exist and should not be awarded. The majority also apparently believes that juries are not capable of weighing factual issues in takings cases. Thomas Jefferson said, “I consider [trial by jury] as the only anchor yet imagined by man, by which a government can be held to the principles of its constitution.”[1] His statement was prescient. In this case, the majority has denied appellants the opportunity to prove their damages to a jury and has sanctioned a governmental violation of constitutional principles.
¶183 There is no justification under the Montana Constitution for a different set of rules for regulatory takings versus an actual occupation of property. The State, when it takes property of any kind, should pay; the more it takes the more it should pay. The takings provision in the Montana Constitution prevents abuse by the State of its eminent domain power and provides protection for private property rights. Freedom and prosperity suffer without such protections. Unfortunately for all citizens of Montana, this Court has ignored its obligations and has abandoned any effort to match the benefits to the State of this taking with the burden imposed on the businesses.
¶184 For that matter, it is legitimate to ask what benefit was received. The State, in its argument, asserted that this was a legitimate exercise of the State’s “police power,” a term often used in constitutional discourse but a term that does not appear in the constitution. As written and passed, 1-143 did not benefit the State. The State claims that some people in Montana were offended by fee hunting. Yet, it is remarkable that their only concern was the *272 exchange of money, not the killing. In reviewing the Montana Constitution, I did not find a constitutional right not to be offended. It must be there because it is the only hook the majority can hang their hat on as suggesting a benefit. 1-143 did not ban the existence of elk farms; it did not ban the shooting of elk within an elk farm; it did not change the amount of regulation; it did nothing to control disease or lessen contact between captive and wild animals; and it did nothing to preserve the State’s hunting heritage.
¶185 What 1-143 did was prohibit fee hunting. It completely destroyed the value of the businesses, which includes the license and other intangible assets, and about 90% of the value of the livestock. This is after, as aptly described by Justice Nelson, the State facilitated and encouraged elk farms and the spending of hundreds of thousands of dollars in specialized capital expenditures. Considering that game farms had been sanctioned in this state for over 80 years, to claim now that these appellants had no reasonable expectation they would be allowed to operate their businesses for profit is offensive to any modicum of common sense. Apparently, the power to regulate, in the majority’s view, equals the power to destroy. I do not believe this is what the constitutional conventioneers had in mind.
¶ 186 It is disturbing that this Court did not attempt to balance costs and benefits. The appellants in this case and in Kafka lost millions of dollars so some people were no longer offended. The rule from this Court: The State wins and pays nothing as long as there is a hint of benefit to the State, even if the private property owner suffers pounds of burden. Justice Holmes was worried about the use of the police power as justification when he stated: “The protection of private property in the Fifth Amendment... provides that it shall not be taken ... without compensation.... When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears.” Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S. Ct. 158, 160 (1922). Today’s majority opinion is the type of decision he was concerned about and leads to the inescapable conclusion that, in Montana, actual benefit does not have to occur before fundamental rights are destroyed.
¶187 The Sportsmen’s and the majority’s assertions that 1-143 served “weighty” and “vital” purposes is laughable. 1-143 did not directly address any of the concerns that led to its passage. It was deceptive and a charade by design-deception and fraud embraced by this Court.
*273 ¶188 Ayn Rand correctly observed that the right to life is the source of all rights-and the right to property is their only implementation. Without property rights, no other rights are possible. These principles are embodied in the Montana Constitution in Article II, Sections 3 and 29. I invite the majority to read them. The fundamental rights to acquire, possess, and protect property are not even given lip service by this Court. Under the majority’s opinion, the State suffers no consequences for the exercise of coercive and unreasonable power in destroying these businesses. There is no serious effort to balance benefits and burdens. It may be too early to start asking, “Who is John Galt?”[2] but more decisions like this will seriously impact all private property and business owners in this State.
¶189 I strongly dissent from the majority opinion.

 The Writings of Thomas Jefferson, vol. 3, 71 (Washington ed. 1861) (Letter to Thomas Paine, July 11, 1789).

 In Ayn Rand’s work Atlas Shrugged, the phrase becomes an expression of helplessness and despair at the current state of the novel’s fictionalized world.